UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-21378-GAYLES

**OSCAR HERRERA**,

    Plaintiff,

v.

**GROVE BAY HOSPITALITY GROUP, LLC,
d/b/a GLASS AND VINE, a Florida
limited liability company**,

    Defendant/Third-Party Plaintiff,

v.

**POPMENU INC., a Delaware corporation**,

    Third-Party Defendant.

_____/

## ORDER[1]

**THIS CAUSE** is before the Court on Third-Party Defendant Popmenu Inc.'s Motion to Dismiss the Third-Party Complaint (the "Motion"). [ECF No. 33]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### BACKGROUND[1]

Plaintiff Oscar Herrera ("Herrera") initiated this action against Grove Bay Hospitality Group, LLC ("Grove Bay") for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA"). [ECF No. 1]. Herrera, a blind Miami resident, alleges that he was unable to fully access Grove Bay's website because it did not have the proper screen

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Grove Bay's allegations in the Third-Party Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

1

reading software. On April 25, 2025, Grove Bay filed an Answer to Herrera's Complaint.[2] On June 23, 2025, Grove Bay filed a Third-Party Complaint (the "Complaint"), [ECF No. 23], against Popmenu, Inc. ("Popmenu"), a software company that specializes in website development. According to Grove Bay, Popmenu assured it that the website conformed with accessibility standards and, therefore, Popmenu should be liable if the website violates the ADA. Grove Bay attached to the Complaint a copy of its Subscription Agreement with Popmenu. [ECF No. 23-1].

Grove Bay asserts claims against Popmenu for common law indemnity (Count I), negligent misrepresentation (Count II), and a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") (Count III). On August 15, 2025, Popmenu moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) for Counts II and III. [ECF No. 33]. Attached to Popmenu's Motion to Dismiss is a printed copy of the Subscription Agreement's Terms of Service ("Terms of Service") [ECF No. 33-1]. The term "Popmenu Terms of Service" is mentioned twice in the Subscription Agreement, in the color red and underlined, as part of a hyperlink to the Terms of Service, [ECF No. 23-1 at 5, 6], but it was not attached to the Complaint. The Terms of Service states that Popmenu "does not warrant that the services will satisfy or ensure compliance with any legal obligations or laws or regulations that may be applicable to you, including the Americans with Disabilities Act of 1990 ('ADA') . . . ." [ECF No. 33-1 at 16] (original capitalized). The Terms of Service also states that Popmenu does "not represent or warrant that the services comply with the ADA's requirements for websites . . . [and is] not responsible for losses resulting from claims against you that your client sites or the services are not in compliance with the ADA . . . ." *Id.* at 17 (original capitalized).

---

[2] On September 24, 2025, Herrera and Grove Bay filed a Joint Notice of Settlement of the action between those two parties and noted the third-party action is still pending. [ECF No. 38].

**LEGAL STANDARD**

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

**DISCUSSION**

**I.  Common Law Indemnity**

As to Count I, Popmenu argues that Grove Bay fails to allege the elements of common law indemnity. The Court agrees. To properly allege common law indemnity under Florida law, a plaintiff must allege that: "(1) the party seeking indemnity must be without fault; (2) the party from whom he is seeking indemnity is wholly at fault; and (3) the party seeking indemnity is liable to the injured party only because it is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." *Underwriters at Int. v. All Logistics Grp.*, Inc., 483 F. Supp. 3d 1199, 1208 (S.D. Fla. 2020) (citing *Heapy Eng'g, LLP v. Pure*

3

*Lodging*, Ltd., 849 So. 2d 424, 425 (Fla. 1st DCA 2003)). "Moreover, recovery for common law indemnity is precluded if both parties are at fault, no matter how slight the fault of the party seeking indemnity." *Id.* "To be wholly without fault means that the basis of the claim for indemnification does not arise out of any conduct or act of the party seeking indemnification." *Id.*

Florida courts additionally require "a special relationship between the parties in order for common law indemnification to exist." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999). "A special relationship is one that makes the defendant vicariously, constructively, or derivatively liable for the acts of the party against whom [indemnification] is sought." *Q.B.E. Ins. Corp. v. Jorda Enters. Inc.*, 2010 WL 11442644, at *2 (S.D. Fla. Aug. 18, 2010) (citing *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 493 (Fla. 1979)). Generally, a special relationship exists where "a third-party defendant has breached a duty arising under a contract with [a] third-party plaintiff or breached some other duty implied by the parties' conduct." *Kesslak v. Tower Hill Preferred Ins. Co.*, 2009 WL 3161808, at *2 (N.D. Fla. Sept. 28, 2009) (citing *Seaboard Coast Line R.R. Co. v. Smith*, 359 So. 2d 427, 428 (Fla. 1978)).

In its Complaint, Grove Bay alleges that Popmenu is liable because it "expressly represented and warranted that the Website would materially conform to the Web Content Accessibility Guidelines." [ECF No. 23 ¶ 12]. Popmenu argues that the Terms of Service explicitly exclude recovery on that basis. Therefore, the Court first addresses whether it can consider the Terms of Service even though Grove Bay did not attach it to the Complaint.

When a party moves to dismiss under Rule 12(b)(6), a court is ordinarily limited to the allegations of a plaintiff's complaint and the exhibits attached thereto. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). However, a court

4

may consider an extrinsic document if the "document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Here, the Court finds the Terms of Service can be considered for the Motion, even though it was not referenced in the text of, or attached to, the Complaint. Grove Bay's argument that only the Subscription Agreement, and not the Terms of Service, is central to its claims is unavailing. The Terms of Service is referenced in the Subscription Agreement attached to the Complaint and directly addresses Popmenu's ADA liability. Therefore, the Terms of Service is central to Grove Bay's claims. Importantly, Grove Bay does not dispute the authenticity of the Terms of Service, only its applicability to this litigation. *See* [ECF No. 36 at 10] ("Grove Bay disputes both the applicability and effect of those provisions, including Popmenu's assertion that they shift responsibility for ADA compliance.").

Grove Bay argues that, even if it can be considered, "[t]he Terms of Service was neither separately negotiated nor knowingly assented to by Grove Bay. Instead, Popmenu included only a hyperlink, buried within the text of the Subscription Agreement." [ECF No. 36 at 10]. Popmenu responds that "the Popmenu [Terms of Service] is conspicuous (bold, underlined, and in red) and Grove Bay was advised before signing that it confirmed the details of the Contract and agreed with Popmenu's Terms of Service." [ECF No. 37 at 4]. The Court agrees with Popmenu.

Contracts which contain hyperlinks to additional terms and conditions—often referred to as "browsewrap agreements"—are valid and enforceable contracts "in Florida and the federal circuits . . . ." *Kipu Sys., LLC v. ZenCharts, LLC*, 2019 WL 7371879, at *4 (S.D. Fla. Oct. 16, 2019) (citations and internal quotation marks omitted). However, such agreements are only enforceable where "the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person

on inquiry notice." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1189-90 (S.D. Fla. 2021) (quoting *Bell v. Royal Seas Cruises, Inc.*, No. 19-CIV-60752, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020)). Although this inquiry is case specific, "courts commonly consider the following factors when analyzing browsewrap agreements: color, size, positioning, language, and design of the hyperlink and its accompanying text." *Tejon v. Zeus Networks, LLC*, 725 F. Supp. 3d 1351, 1355 (S.D. Fla. 2024).

In two separate parts of the Subscription Agreement, right above Grove Bay's signature lines, it states, "I confirm the details of this Subscription Agreement to be correct, and I agree with the Popmenu Terms of Service (available at https://my.popmenu.com/terms)." [ECF No. 23-1 at 5–6]. As reproduced in the image below,[3] "Popmenu Terms of Service" is a hyperlink, written in red and underlined, in contrast to the surrounding text in black, which is not underlined, followed by the Terms of Service website address. *Id*.

> **Recurring Amount Due: Every 1 Month(s)**
> **Agreement Minimum Duration: 3 Months**
>
> I confirm the details of this Subscription Agreement to be correct, and I agree with the **Popmenu Terms of Service** (available at https://my.popmenu.com/terms).
>
> **Client Name:** Grove Bay Hospitality Group
> DocuSigned by: [signature]
> 72D1E4F508C741A
> **Full Name:** Francesco Balli
> **Title:** CEO
> **Date Signed:** 10/6/2023 | 4:39 PM EDT

[ECF No. 23-1 at 5–6].

Based on the foregoing, the Court finds that the Terms of Service hyperlink is conspicuous enough to put a reasonably prudent person on inquiry notice. Even if the user did not understand

---

[3] For ease of reference, the Court has included a color copy of the portion of the Subscription Agreement referring to the Terms of Service. [ECF No. 23-1 at 6].

the words to be a hyperlink, the website address is provided immediately after the hyperlink. Importantly, Grove Bay's signature line is right below the hyperlink and the website address to the Terms of Service, thereby requiring the user to read the sentence confirming they agree with the Terms of Service prior to signing. *See, e.g.*, *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1140-41 (M.D. Fla. 2023) (finding the word Terms being underlined indicated the presence of a hyperlink, and was sufficiently conspicuous given it was placed above the sign up button); *Rogolino v. Walmart, Inc.*, 2025 WL 396453, at *3 (S.D. Fla. Feb. 4, 2025) (finding the terms were sufficiently conspicuous when placed directly above the order button and "declines to conclude that a lack of blue font and capitalization overrides the positioning and clarity of the Terms. Plus, the Terms are underlined, making it clear to the average internet user that they are hyperlinks . . . ."); *Martin v. Lens.com, Inc.*, 2024 WL 4826048, at *5 (S.D. Fla. Nov. 19, 2024) (finding the hyperlink sufficiently conspicuous when "the underlined hyperlink's text color changes from black to red when the cursor hovers over it"). Finally, the fact that the text explicitly notes that the user agrees with Popmenu's Terms of Service right above the Grove Bay's signature line indicates that Grove Bay assented to the Terms of Service.

Because Grove Bay was put on inquiry notice and assented to the Terms of Service, its exclusion "for losses resulting from claims against [Grove Bay] that [Grove Bay's] client sites or the services are not in compliance with the ADA," [ECF No. 33-1 at 17], is enforceable. Accordingly, Grove Bay's common law indemnity claim fails because it cannot show that Popmenu breached a contractual duty or that it was otherwise at fault. *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999). Therefore, Popmenu's Motion to Dismiss is granted as to Count I.

## II. Negligent Misrepresentation

Popmenu also argues that Grove Bay's allegations of negligent misrepresentation fail to meet the elements of the claims and the heightened pleading standards of Federal Rule of Civil Procedure 9(b). The Court agrees. To state a claim for negligent misrepresentation, Grove Bay must allege "(1) a misrepresentation of material fact; (2) that the representor either knew or should have known was false or made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) that injury resulted to [Grove Bay] acting in justifiable reliance on the misrepresentation." *Behrman v. Allstate Life Ins. Co.*, 2005 WL 8154572, at *3 (S.D. Fla. Mar. 24, 2005).

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see, e.g., Inman v. Am. Paramount Fin.*, 517 F. App'x. 744, 748 (11th Cir. 2013). Rule 9(b) is satisfied if the Complaint states "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citation omitted). Based on these criteria, the Court finds that Grove Bay has not adequately alleged a claim for negligent misrepresentation.

In its Complaint, Grove Bay alleges that "Popmenu represented to Grove Bay that it would deliver and maintain a website that materially conformed to recognized accessibility standards" and that Popmenu expressly represented and warranted that the Website would materially conform to the Web Content Accessibility Guidelines ('WCAG')." [ECF No. 23 ¶¶ 12, 31]. However, Grove

Bay does not allege the specific content of the statements or identify the person who made them. Grove Bay also alleges that the statements were made "in the course of Popmenu's business" but does not allege the time and place of the statements. *Id.* ¶ 32. Therefore, Grove Bay fails to adequately state a claim for negligent misrepresentation. Additionally, Grove Bay's negligent misrepresentation claim is contradicted by the Terms of Service. As such, Popmenu's Motion to Dismiss is granted as to Count II.

### III.    FDUPTA

As to Count III, Popmenu argues that Grove Bay fails to adequately allege the elements of a FDUTPA claim. To state a claim under FDUTPA, Grove Bay must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi, U.S.A.*, 17 F.4th 1084, 1087 (11th Cir. 2021) (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016)). Because the FDUPTA claim sounds in fraud, [ECF No. 23 ¶ 40 ("these representations were likely to mislead consumers")], Grove Bay is required to comply with the 9(b) standard described above. *See Sol. Z v. Alma Lasers, Inc.,* 2012 WL 13012765, at *3 (S.D. Fla. Jan. 25, 2012) (citing cases).

Here, Grove Bay fails to adequately allege its FDUPTA claim. In Count III, Grove Bay alleges that "Popmenu marketed its services to Grove Bay by representing that it possessed specialized expertise in designing and developing websites that complied with accessibility standards, including the WCAG." *Id.* ¶ 39. According to Grove Bay, "Popmenu's failure to deliver a WCAG-compliant Website as promised constitutes a deceptive act and an unfair practice." *Id.* ¶ 42. However, Grove Bay does not allege, with particularity, the details about the misrepresentations, including its content, author, date, time, and place. *See* Fed. R. Civ. P. 9(b).

9

Further, this claim is also contradicted by the clear language in the Terms of Service. As such, Popmenu's Motion to Dismiss is also granted as to Count III.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Popmenu's Motion to Dismiss the Complaint, [ECF No. 33], is **GRANTED**.

2. Grove Bay's Third-Party Complaint [ECF No. 23] is **dismissed** with prejudice.

3. This action is **CLOSED**.

4. All pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of December, 2025.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE